MCKESSON AND ROBBINS, INC. *v.* WALTER W. WALSH,
TAX COMMISSIONER.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued April 5—decided May 17, 1945.

*William Reeves,* for the plaintiff.

*Thomas J. Conroy,* assistant attorney general, with
whom, on the brief, was *Francis A. Pallotti,* attorney
general, for the defendant.

JENNINGS, J.   This case involves the construction
and application to the facts of the tax on income of
corporations prescribed in General Statutes, Sup. 1941,

§ 177f.  The portion of the statute of immediate concern here reads as follows: "(b) when [net income is] derived from the manufacture, sale or use of tangible personal or real property, the portion thereof attributable to business within the state shall be determined by means of an allocation fraction to be computed as the simple arithmetical mean of three fractions.  The first of these fractions shall represent that part of the average monthly net book value of the total tangible property held and owned by the taxpayer during the income year which is held within the state. . . ." A reading of this statute as a whole indicates that all of its provisions cannot be applied by mathematical computation but must be the subject of estimate. Perhaps for that reason, the first sentence of § 177f defines the guiding principle as follows: "If the trade or business of the taxpayer shall be carried on partly without the state, the business tax shall be imposed on a base which reasonably represents the proportion of the trade or business carried on within the state." The plaintiff is such a corporation and in making return of its total tangible assets it included liquor owned by it and stored in bonded and other warehouses and also liquor owned by it and in transit to its places of business.  The defendant disallowed these items and, as a result, the tax of the plaintiff was increased. This results from the fact that the numerator of the first fraction is the average monthly value of property owned and held within the state and the denominator is the total value of tangible property held and owned everywhere.  Anything which increases the amount of the denominator (as inclusion of the value of liquor in warehouses and in transit) would therefore reduce the size of the fraction and in consequence the amount of the tax.

The questions asked in the reservation are: "1. Is

the average monthly net book value of liquor of the Appellant which is stored in bonded and other warehouses, all of which property is owned by the Appellant, 'tangible property held and owned by the taxpayer' Appellant within the provisions of Section 420c as amended by Section 177f of the 1941 Supplement to the General Statutes?

"2. Is the average monthly net book value of merchandise which has been purchased by the Appellant from suppliers and is in transit to the Appellant's places of business, which property is owned by the Appellant, 'tangible property held and owned by the taxpayer' Appellant within the provisions of Section 420c as amended by Section 177f of the 1941 Supplement to the General Statutes?"

It was agreed during the argument that the case turns on the meaning of the word "held" and that this should be the same whether the liquor was within or without Connecticut. In the stipulated facts it is agreed that the liquor in question was owned by the plaintiff and was outside the state, that the warehoused liquor was stored in individually identified containers and that the plaintiff was not in the business of trading in warehouse receipts but stored the liquor until it was withdrawn for bottling and sale at wholesale. The plaintiff claims that the accepted meaning of "held" includes not only liquor in actual possession but also the warehoused liquor and that in transit. It points out that the use of the word "owned" alone would render the allocation to a particular state of tangible assets owned difficult if not impossible in the case of a corporation like the plaintiff engaged in extensive interstate business, and that the addition of the word "held" makes this allocation easy and definite. The defendant claims that the accepted definition of the word "held" includes the conception of

physical possession and that the plaintiff did not have physical possession of either the warehoused liquor or that in transit.

This tax law was enacted following a report by a special commission appointed to study the Connecticut tax structure. Report of the Connecticut Temporary Commission to Study the Tax Laws, etc., chap. 15. There is no intention apparent in that report to exclude from the tax base any tangible property owned by the taxpayer. No reason appears or has been advanced as to why the General Assembly should have intended to exclude property of that kind except that in cases like that at bar the tax would be higher. The latter argument has little weight. On the contrary, the construction claimed by the plaintiff leads to a fair and just result on the whole and is more in accord with the guiding principle above quoted from the act. If the plaintiff had received too large a shipment to place in its own warehouse, and had temporarily stored it on adjoining land owned by another until room could be made for it, it could hardly be claimed that the shipment was not held by the plaintiff. There is no difference in principle between this illustration and the status of the liquor described in the questions reserved.

In defining "held," which is capable of so many meanings, the purpose of the statute must be borne in mind. *Chicago Home for Girls* v. *Carr,* 300 Ill. 478, 484, 133 N.E. 344. This purpose, as has been stated, is to reach a fair base of taxation. The exclusion of property of the character under consideration would not promote that object. The meaning contended for by the plaintiff has ample support in *State Bank* v. *Waterhouse,* 70 Conn. 76, 85, 38 Atl. 904, and in cases construing "held" with reference to the federal tax laws. The question in *McFeely* v. *Commissioner,* 296

U.S. 102, 56 Sup. Ct. 54, was whether property acquired from a decedent through intestacy or a general bequest was "held" under a taxing statute from the date of death or from the date of distribution. It was decided (p. 106) that the property was acquired and held from the date of death and that this would be so even though under local law the right of possession was withheld during administration. The court said (p. 107): "In common understanding, to hold property is to own it." See also *Burnet* v. *Brooks*, 288 U.S. 378, 394, 53 Sup. Ct. 457; *Flour City National Bank* v. *Shire*, 88 App. Div. 401, 406, 84 N.Y.S. 810; *Witsell* v. *Charleston*, 7 S.C. 88, 99; *Wey* v. *Salt Lake City*, 35 Utah 504, 508, 101 Pac. 381. The numerous definitions in the defendant's brief including the element of physical possession are doubtless correct in the sense that "held" often does include that element. None contravenes a conclusion that under the particular facts of this case "held and owned" means not only property owned and in physical possession but property owned and warehoused or in transit.

The final claim of the defendant is that both situations presented by the questions on which advice is asked were bailments and that a bailor cannot be said to hold the bailed property. In bailment, the owner or bailor has a general property in the goods bailed and the possessor or bailee a special property. 1 Swift's Digest, p. 386; *Brown* v. *New Haven Taxicab Co.*, 92 Conn. 252, 254, 102 Atl. 573. Ordinarily both a warehouseman (Swift, op. cit., p. 387) and a common carrier (id. at 390) are bailees. The right of possession in the bailee does not preclude the conception of a coincidental constructive possession in the bailor. Thus, it has been said that the possession of the bailee is also that of the bailor; Story, Bailments (9th Ed.), p. 104; that delivery to

the carrier is delivery to the defendant; *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 494, 501, 86 Atl. 19; that after a bailment the legal possession still remains in the owner; *Cooperider* v. *Myre*, 37 Ohio App. 502, 506, 175 N.E. 235; and that the bailor, on delivery to him of the warehouse receipt, receives in fact an actual transfer and delivery of the property itself by its symbol. *State Bank* v. *Waterhouse*, supra; *Ammon* v. *Gamble-Robinson Commission Co.*, 111 Minn. 452, 455, 127 N.W. 448. The last case was decided under a Minnesota statute but it did not change the common law in respect to the principle involved. It is also generally held that a bailor can bring possessory actions such as replevin. Goddard, Outlines, Bailments & Carriers (2d Ed.), p. 23. See also *Railway Express Agency, Inc.* v. *Goodman's Express Corporation*, 129 Conn. 386, 388, 28 Atl. (2d) 869.

The words "held and owned" as used in the statute under consideration, when its purpose and the meaning of the words are considered, include the goods of the plaintiff in warehouses and in transit.

The answers to both questions stated in the reservation are "Yes," and the Superior Court is so advised. No costs will be taxed in this court to either party.

In this opinion the other judges concurred.